UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DANE SMOTHERS, JR., | ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiff, | | |
| v. | | Civil Action No. 19-2632 (ABJ) |
| DISTRICT OF COLUMBIA, *et al.*, | | |
| Defendants. | | |

**MEMORANDUM OPINION**

On August 2, 2017, plaintiff Dane Smothers, Jr., a newly minted District of Columbia firefighter, was struck by a ladder truck while he was attending his first fire. Am. Compl. [Dkt. # 1-2] at ¶¶ 1, 34.[1] Plaintiff sustained serious injuries in the accident. Am. Compl. ¶ 1. He filed a lawsuit in Superior Court against the District of Columbia; Gregory Dean, Chief of the District of Columbia Fire and Emergency Services ("DCFEMS"); and Jon Thomas Dyson and Patrick Mackin Carey, the operators of the truck, in their official capacities as D.C. firefighters, and the gravamen of his complaint is that he and the other firefighters on the scene had been inadequately trained, and that training deficiencies were well known to departmental officials. *See generally* Am. Compl. Because the eight count amended complaint included constitutional claims grounded in federal law, the case was removed to this Court. *See generally* Notice of Removal [Dkt. # 1].

---

1   The Amended Complaint begins at page 115 of the PDF of the Superior Court Documents filed as Ex. 2 to the Notice of Removal [Dkt. # 1-2]. References to the page and paragraph numbers of the Amended Complaint refer to page numbers at the bottom of the Amended Complaint itself.

1

Now defendants are moving to dismiss the complaint. Defs.' Mot. to Dismiss [Dkt. # 3] ("Defs.' Mot."); Defs.' Mem. of P. & A. in Supp. of Defs.' Mot. to Dismiss [Dkt. # 3] ("Defs.' Mem."). Because the Court finds that the complaint fails to state any constitutional claims, the counts that provided a basis for this Court's jurisdiction will be dismissed, and the case will be remanded. Plaintiff may well have grounds for relief, and this opinion finding fault with the federal claims should not be read to express any point of view about the seriousness of plaintiff's injuries or the viability of the negligence allegations or any other claim.

## BACKGROUND

Plaintiff joined the fire department on September 18, 2016, and he was certified by District of Columbia Fire Chief Dean as having met the International Fire Services Accreditation Congress training requirements on April 16, 2017. Am. Compl. ¶ 34. On August 2, 2017, the firefighters were responding to a fire in the 800 block of F Street Northeast, Am. Compl. ¶ 30, and plaintiff on the scene when he was struck by Ladder Truck # 7 ("Truck # 7"). Defendant Dyson was in the driver's seat at the front of the truck and Carey was in the tillerman position at the back of the truck. Am. Compl. ¶¶ 6–7. Based on reports prepared by the Metropolitan Police Department and DCFEMS, and an illustration included as part of the amended complaint, the complaint alleges that Truck # 7 was proceeding northbound on 8th Street NE, and attempting to make a right turn onto F Street, at the same time another firetruck was heading southbound on 8th Street. Am. Compl. ¶¶ 30–32. Plaintiff was standing at the rear of a parked firetruck, in the intersection of F and 8th Street NE. See Am. Compl. ¶ 32.

According to the complaint, the back portion of Truck # 7, steered by the tillerman, could not successfully make the turn onto F Street because its turning radius was limited by the southbound truck on 8th Street. Am. Compl. ¶ 32. The complaint alleges that "[t]he drivers of the

ladder truck intentionally drove into [p]laintiff . . . to avoid a collision with" the southbound truck. Am. Compl. ¶ 32.  Plaintiff suffered "injury to parts of his body, some of which are believed to be permanent, especially to his spinal cord, suffered severe pain of the body and mind; incurred medical damages and he will lose time and money from his employment; will continue to suffer pain, severe emotional distress, mental psychological harm, as well as other damages."  Am. Compl. ¶ 73.

On June 6, 2019, plaintiff filed the original complaint in D.C. Superior Court, *see* Superior Court of the District of Columbia Civil Division Information Sheet [Dkt. # 1-2]; Compl. [Dkt. # 1-2], and he amended it on July 24, 2019.  *See* Am. Compl.  It contains four tort claims, Am. Compl. ¶¶ 37–61, as well as four constitutional claims brought under 42 U.S.C. §1983.  Am. Compl. ¶¶ 62–76.  As to the tort claims:

- Count I, "Fraudulent Misrepresentation by the District of Columbia Government and Chief Gregory Dean," alleges that: the District and Fire Chief Dean fraudulently misrepresented that plaintiff and his coworkers were adequately trained in conformity with national guidelines; plaintiff relied on this misrepresentation when he chose to begin working as a firefighter; and plaintiff's emotional and physical injuries were a result of the fraudulent misrepresentations.  Am. Compl. ¶¶ 37–46.

- Count II, "Gross Negligence of Defendants Carey, Dyson, Dean, and the District of Columbia Government" alleges that: the District acted with gross negligence when it trained "drivers of emergency response vehicles in violation of the national standard of care;" that Dean's intentional misrepresentations injured plaintiff; and that Carey and Dyson "chose their safety over the safety of [plaintiff].  This is, they sacrificed [plaintiff] for their safety.  Am. Compl. ¶¶ 47–54.

- Count III, "Intentional Tort by Carey, Dyson, and Dean," alleges that defendants Carey and Dyson intentionally drove their firetruck into plaintiff, that their actions were unreasonable under the circumstances, and that defendant Dean "knew that affirmatively misrepresenting the extent of training to firefighters was substantially certain to cause serious injury to firefighters and the public."  Am. Compl. ¶¶ 55–56.

- Count IV, "Vicarious Liability and Respondeat Superior," seeks to hold the District accountable for the drivers' negligence as well as the intentional torts they allegedly committed while acting in their official capacity. Am. Compl. ¶¶ 58–61.

As for the federal claims, Counts V through VIII are all predicated on 42 U.S.C. § 1983, and they allege that each of the defendants violated plaintiff's constitutional rights. *See* Am. Compl. ¶¶ 62–76.

- Count V, "Constitutional and Civil Rights Violations Pursuant to 42 U.S.C. § 1983 by Defendant District of Columbia," seeks to hold the District of Columbia liable for defendant Dean's intentional misrepresentations that allegedly deprived plaintiff of his Fifth Amendment rights to due process and equal protection. Am. Compl. ¶¶ 62–67.

- Count VI, "Constitutional and Civil Rights Violations Pursuant to 42 U.S.C. § 1983, Defendant Dean Individually," alleges that the Fire Chief's affirmative efforts to mislead plaintiff into believing that he and his coworkers were adequately trained, and his failure to properly hire, train, and supervise firefighters under his control deprived plaintiff of his Fifth Amendment rights to due process and equal protection. Am. Compl. ¶¶ 68–71.

- Count VII, "Constitutional and Civil Rights Violations Pursuant to 42 U.S.C. § 1983 Compensatory Damages," alleges violations of plaintiff's Fifth Amendment rights by the District of Columbia and appears to be largely duplicative of Count V. Am. Compl. ¶¶ 72–73.

- Count VIII, "Constitutional and Civil Rights Violations Pursuant to 42 U.S.C. § 1983, Defendants Dysons and Carey Compensatory Damages," alleges that defendants Carey and Dyson violated plaintiff's Fifth Amendment due process and equal protection rights when they intentionally struck him with the firetruck. Am. Compl. ¶¶ 74–76.

On September 3, 2019, Defendant Carey removed the action because the amended complaint contains claims that give this Court federal question jurisdiction pursuant to 28 U.S.C. § 1331. *See* Notice of Removal at 2. On September 10, 2019, defendants moved to dismiss the amended complaint on multiple grounds, including that the complaint fails to state any viable

4

constitutional claims, and that the individual defendants are entitled to qualified immunity. *See generally* Defs.' Mem.[2] The Court need not reach all of the issues raised in the motion because while the facts of this case are quite disturbing, and plaintiff has suffered a serious injury, he has not alleged facts to state a plausible claim that his constitutional rights were violated that day, and a constitutional violation is a necessary element of a section 1983 claim against either an individual or a municipality.[3] For that reason, the Court will dismiss the federal claims, and it will remand the case to the D.C. Superior Court.

## STANDARD OF REVIEW

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 678–79, citing *Twombly*, 550 U.S. at 555–56.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678, citing *Twombly*, 550 U.S. at 556. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*, citing

---

[2] Plaintiff opposed the motion, *see* Plaintiff Dane Smothers' Opposition to Defendants' Motion to Dismiss [Dkt. # 6] ("Pl.'s Opp."); and defendants submitted a reply. *See* Defs.' Reply to Pl.'s Opp. [Dkt. # 8].

[3] On February 6, 2020, the parties submitted a consent motion to dismiss the action against Defendant Dyson, which the Court granted on March 17, 2020. *See* Min. Order (Mar. 17, 2020).

*Twombly*, 550 U.S. at 556.  A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.*, quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, citing *Twombly*, 550 U.S. at 555.

When considering a motion to dismiss under Rule 12(b)(6), the Court is bound to construe a complaint liberally in the plaintiff's favor, and it should grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994), citing *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1994).  Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions.  *See id.*; *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

**ANALYSIS**

Plaintiff's complaint is not a model of clarity.  The four constitutional claims are a mashup of section 1983 jurisprudence, as the claims against individuals recite language drawn from the case law and principles that bear on municipal liability, and the claims against the District weave together multiple potential grounds for municipal liability while also complaining about individual negligence and other largely tortious conduct.  Also, the constitutional allegations – which make no effort to differentiate whether they are based on substantive and procedural due process -- are

largely conclusory, and while the Court is obliged to accept plaintiff's factual allegations as true, it need not accept his legal analysis.

## I.   Section 1983

Counts V through VIII – that is, all of the federal claims – are predicated on section 1983 of the Civil Rights Act, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To bring a claim against an individual under section 1983, a plaintiff must establish the following elements: first, a "violation of a right secured by the Constitution and the laws of the United States;" *West v. Atkins*, 487 U.S. 42, 48 (1988), second, that the "alleged deprivation was committed by a person acting under color of state [or District of Columbia] law," *id.*; and third, that the defendant's acts were the proximate cause of the injuries he sustained. *Elkins v. District of Columbia*, 610 F. Supp. 2d 52, 61 (D.D.C. 2009), *clarified on denial of reconsideration*, 636 F. Supp. 2d 29 (D.D.C. 2009), *aff'd*, 690 F.3d 554 (D.C. Cir. 2012).

The allegation of a constitutional deprivation is fundamental to a suit brought against a governmental entity as well. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. "Only those who cause a violation of a right secured by the Constitution are liable." *Elkins v. District of Columbia*, 690 F.3d 554, 564 (D.C. Cir. 2012), citing *Iqbal*, 556 U.S. at 676.

To proceed against a municipality, a plaintiff must allege that the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978). In other words, "a municipality cannot be held liable under § 1983 on *a respondeat superior* theory," *id*. at 691, because "[t]he 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in original). Therefore, to maintain a section 1983 action against the District of Columbia, the Court must first "determine whether the complaint states a claim for a predicate constitutional violation," and "then the court must determine whether the complaint states a claim that a custom or policy of the municipality caused the violation." *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2013). The D.C. Circuit has explained that there are several ways in which the requirement may be satisfied:

> [T]he explicit setting of a policy by the government that violates the Constitution; the action of a policy maker within the government; the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become custom; or the failure of the government to respond to a need (for example, training of employees) in such a manner as to show deliberate indifference to the risk that not addressing the need will result in constitutional violations.

*Id*. at 1306 (internal quotations and citations omitted).

Plaintiff predicates his section 1983 claims on both the Equal Protection Clause and the Due Process Clause: he alleges that he was deprived of the right not to be subjected to excessive or deadly force, the right not to be deprived of life, liberty or property without due process, and

8

the right to equal protection, all secured by the Fifth Amendment.  But since he has not put his finger on any constitutional violation committed by Chief Dean or the individual firefighters, the claims fail at the first level of the analysis, and one need not go on to consider whether the complaint plausibly alleges that any alleged constitutional violation was caused by a custom or practice, or deliberate indifference, on the part of the municipality.

## II.     The Equal Protection Claims

Plaintiff alleges in Counts V through VIII that the actions of each of the defendants in this case violated his right to the equal protection of the laws, guaranteed by the Fifth Amendment.  Am. Compl. ¶¶ 70, 73, 75.  The Fifth Amendment states in relevant part that, "[n]o person . . . shall be . . . deprived of life, liberty, or property without due process of law . . . ."  U.S. Const. amend. V.  And although it does not contain its own equal protection clause, the Supreme Court has directed that the Fourteenth Amendment's Equal Protection Clause applies to the District of Columbia through the Fifth Amendment's Due Process Clause.  *See Bolling v. Sharpe*, 347 U.S. 497, 499 (1954).  In order to establish an equal protection violation, a litigant is required to show that "the defendant acted with discriminatory purpose," meaning "[i]t [] involves a decisionmaker's undertaking a course of action 'because of, not merely in spite of, the action's adverse effects upon an identifiable group.'"  *Iqbal*, 556 U.S. at 676, quoting *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979).

But the amended complaint does not contain any allegations that plaintiff is a member of a protected group or that that defendants' actions were undertaken to purposefully discriminate against him because of his membership in that group.  *See Iqbal*, 556 U.S. at 676.  Indeed, the complaint includes no allegations about anyone's race, sex, or national origin, and it does not suggest that anyone harbored any bias against the plaintiff on any of those bases.  For those

reasons, plaintiff has failed to plausibly allege that his rights under the Equal Protection Clause were violated, and, to the extent it is an alleged violation of the Equal Protection Clause that is meant to serve as the predicate for Counts V, VI, VII, and VIII, the counts must be dismissed.

### III.   The Substantive Due Process Claims

It appears that plaintiff is also attempting to allege in Counts V, VI, VII, and VIII that Dean, Carey, and the District of Columbia have deprived him of his substantive rights under the due process clause of the Fifth Amendment.  He alleges that the individual named defendants deprived him of his constitutional rights while acting in their official capacities, and he seeks to extend liability to the District for their actions.  *See* Am. Compl. ¶ 63. Specifically, plaintiff alleges that "the District of Columbia arbitrarily created a heightened risk of danger that ultimately harmed [plaintiff].  The conduct of the District is so egregious, so outrageous, that it shocks the conscience." Am. Compl. ¶ 65.

"The touchstone of due process is protection of the individual against arbitrary action of government . . . whether the fault lies in a denial of fundamental procedural fairness . . . or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective."  *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845–46 (1998) (internal citations omitted).  The *Lewis* case presented the question of whether police had violated the constitutional guarantee of substantive due process by causing a person's death during a high speed chase.  While the Supreme Court recognized the existence of a substantive claim under the due process clause, it emphasized that negligently inflicted harm, and even reckless indifference to life, would not satisfy the test; instead, there likely had to be a purpose to cause harm unrelated to the legitimate object of the governmental action.  *Lewis*, 523 U.S. at 848–49.

As both parties acknowledge, the standard to be applied when assessing a claim alleging a substantive due process violation is whether the executive action underlying the claim is "so egregious, so outrageous that it may fairly be said to shock the contemporary conscience." *Lewis,* 523 U.S. at 847 n.8; *see* Pl.'s Opp. at 11; *see* Defs.' Mem. at 8.  For governmental action to be arbitrary and conscience shocking in the constitutional sense, it must violate "'the decencies of civilized conduct.'"   *Lewis,* 523 U.S. at 846, quoting *Rochin v. California*, 342 U.S. 165, 172-73 (1952). The D.C. Circuit has directed that "the conscience-shock inquiry is a threshold question in a due process challenge," which "exists to differentiate substantive due process . . . from local tort law." *FOP Dep't of Corr. Labor Comm. v. Williams*, 375 F.3d 1141, 1145 (D.C. Cir. 2004) (internal quotations and citations omitted).  And the Supreme Court has explained that "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Lewis*, 523 U.S. at 849.

### A.  Plaintiff does not state a substantive due process claim against Carey.

In Count VIII, plaintiff alleges that Carey, acting under the color of law as a firefighter, violated his constitutional rights when he "intentionally drove a fire truck into [p]laintiff Smothers in order to protect [his] own interests and the District of Columbia's property." Am. Compl. ¶ 74. Based on this conduct, plaintiff claims that he was deprived of his Fifth Amendment rights to "not be subjected to excessive or deadly force . . . [and] not to be deprived of life, liberty, or property without due process of the law." Am. Compl. ¶¶ 70, 75.

Plaintiff has not pled sufficient facts to overcome the high threshold established by the Supreme Court in *Lewis*. The complaint alleges that "the drivers of the ladder truck intentionally drove into . . . [plaintiff] to avoid a collision with another ladder truck that was passing in a

11

southerly direction." Am. Compl. ¶ 32.  For purposes of this motion to dismiss, the Court will assume the truth of the allegation that the firefighters made a deliberate decision, and that they did not strike the plaintiff accidentally.  But given the circumstances surrounding the accident, including the fact that the trucks were en route to assist in an active fire, and the drivers were seeking to avert a collision with another firetruck, the applicable case law compels a finding that notwithstanding its dire consequences, this was not an action that "shocks the contemporary conscience." *Lewis*, 523 U.S. at 847 n.8.

The *Lewis* court explained in some detail why decisions made by officers on the street in the heat of the moment are not likely to supply the basis for a constitutional claim.  In that case, a police officer was engaged in a high-speed pursuit of a motorcycle carrying two men, and at the abrupt end of the chase, he skidded into one of the riders, Lewis, causing his death.  523 U.S. at 837.  Lewis's family brought the case in part pursuant to section 1983, alleging that Smith deprived Lewis of his Fourteenth Amendment substantive due process right to life.  *Id*.  The Supreme Court granted certiorari after the Ninth Circuit held that there was a genuine dispute of material fact as to whether Smith's involvement in the high-speed pursuit amounted to deliberate indifference to the decedent's rights and remanded the case to the district court for trial.  *Id*. at 838-39.

In reversing the Ninth Circuit's ruling, the Supreme Court gave significant weight to the fact that the officers involved in the chase had "practically instantaneous" responses to lawless behavior, and that there was "no reason to believe they were tainted by an improper or malicious motive.  *Id*. at 855.  The Court held that even if Smith's choice to engage in a high-speed pursuit "offended the reasonableness held up by tort law or the balance struck in law enforcement's own

codes of sound practice, it does not shock the conscience," and he could not be held liable for violating Lewis's substantive due process right to life. *Id*.

The same reasoning can be applied here. Carey and Dyson were operating a vehicle under exigent circumstances when time was of the essence – responding to a fire – and as plaintiff recounts the incident, they were forced to make a split second decision between two dangerous alternatives. While plaintiff's injuries cannot be minimized, the complaint is devoid of any allegations suggesting that Carey acted with malicious intent to harm him or any other improper motivation. Carey, like the officer in *Lewis*, was acting in response to a public safety emergency and did not have the luxury of taking the time to consider alternative options to avoid any injuries. His alleged conduct does not shock the conscience, and for that reason, the complaint fails to state a substantive due process claim against him. Count VIII will, therefore, be dismissed.[4]

### B. Plaintiff fails to state a constitutional claim against Chief Dean.

The complaint also fails to plausibly allege that Chief Dean violated plaintiff's constitutional rights. In Count V, the claim against the District, plaintiff alleges that Dean's alleged lies about firefighter training "infringed on [plaintiff's] constitutional right to be free of unjustified intrusions on his personal liberty." Am. Compl. ¶ 62. Count VI alleges that Chief Dean "affirmatively took steps to mislead [plaintiff] into believing that [he] and his co-workers had been adequately trained," and that the Chief "arbitrarily acted when he falsified graduation certificates." Am. Compl. ¶ 68. Plaintiff claims that Dean acted with "reckless disregard with deliberate indifference for the plaintiff's rights under the Constitution," specifically pointing to the Chief

---

4   Defendants argue that Carey is entitled to qualified immunity on the constitutional claims against him. Defs.' Mem. at 7–11. But because qualified immunity requires a finding of a constitutional violation, *see Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), which the Court has determined does not exist here, the Court need not reach the issue.

Dean's "fail[ure] to properly hire and . . . to train and supervise firefighters under his control." Am. Compl. ¶ 69.

While plaintiff may ultimately be able to sustain his tort claims against Dean, the complaint does not set forth a plausible allegation that Dean deliberately deprived him of his substantive due process rights not to be subjected to excessive or deadly force and to not be deprived of life, liberty, or property without due process of law. Am. Compl. ¶ 70. Instead, plaintiff simply tosses together the "custom and practice" and "deliberate indifference" phraseology that would be necessary to support a section 1983 claim against a municipality based on Dean's conduct while omitting the facts needed to allege that the conduct itself was unconstitutional. *See, e.g.*, Am. Compl. ¶ 68 ("Chief Dean's conduct was egregious conduct that shocks the conscience. He acted with deliberate indifference to the constitutional rights of [plaintiff]."); Am. Compl. ¶ 69 ("Each and all of the acts of [] Dean were done under the color and pretense of the laws, statutes, ordinances, regulations, customs and usages of the District of Columbia and in bath faith and with reckless disregard with deliberate indifference for the plaintiff's rights under the Constitution . . . ."). But these allegations, even when viewed in the light most favorable to plaintiff, do not contain any facts that could lead to a reasonable inference that Chief Dean's knowingly exposed the plaintiff to a risk of *constitutional* harm. For that reason, Count VI will be dismissed.

### C. Plaintiff has not stated a constitutional claim against the District.

In Counts V and VII, plaintiff alleges that Chief Dean "is an agent of the District of Columbia, acting as the alter ego of the Defendant District of Columbia," and that he "acted concurrently with the intent to harm by the District of Columbia's agents Carey and Dyson." Am. Compl. ¶ 62. The amended complaint also says that District of Columbia is liable for the deprivation of plaintiff's constitutional rights by failing "to properly hire and . . . to train and

14

supervise its firefighters," thereby "arbitrarily creat[ing] a heightened risk of danger that ultimately harmed [plaintiff]." Am. Compl. ¶¶ 63, 65, 72.  It seems, then, that plaintiff is attempting to hold the District liable based on two different theories:  1) a *respondeat superior* theory that the District is vicariously liable for the conduct of its agents in their official capacity, and 2) municipal liability as the Supreme Court defined it in *Monell*.

But the central holding of *Monell* is that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."  436 U.S. at 691.  And one cannot even begin the *Monell* analysis to determine whether the acts of an individual state actor were *caused by* the municipality itself absent the predicate constitutional violation.  *Baker*, 326 F.3d at 1306, citing *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992).  Because the Court has already determined that neither of the individual defendants committed constitutional violations, that requirement is not met, and the complaint also fails to state a section 1983 claim against the District.  Counts V and VII must, therefore, be dismissed.

## CONCLUSION

For the foregoing reasons, Counts V through VIII will be dismissed for failure to state a constitutional claim.  Because the Court's jurisdiction over this matter is based solely on the allegations grounded in federal law that are being dismissed, the remainder of the case will be remanded to the D.C. Superior Court.  A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: September 9, 2020